# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIE K. SHAFFER formerly known as MARIE K. BROOKS,<br><br>Plaintiff,<br><br>v.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, LINCOLN FINANCIAL GROUP, and the UNIONTOWN HOSPITAL LONG TERM DISABILITY PLAN,<br><br>Defendants. | Civil Action No.  2:20-cv-1667 |

## COMPLAINT

### I. INTRODUCTION

1. Plaintiff Marie K. Shaffer formerly known as Marie K. Brooks[1] ("Plaintiff" or "Shaffer") brings this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, for benefits due under the Long-Term Disability Plan (the "LTD Plan") sponsored by her former employer, Uniontown Hospital and administered by Defendant Lincoln Financial Group d/b/a Defendant Lincoln National Life Insurance Company ("Lincoln Financial") (collectively, "Defendants"). Plaintiff also seeks penalties for Defendants' failure to furnish requested plan documents as required Section 104(b)(4) of ERISA, 29 U.S.C. § 1024(b)(4).

---

[1] Plaintiff Marie K. Shaffer, who was formerly known by her married name, "Marie K. Brooks," was divorced in December 2019. In July 2020, she changed back to her maiden name, "Marie K. Shaffer." The decisions at issue here were issued in her married name, Marie K. Brooks.

2.This is the second time these matters are before this Court. On May 18, 2018 Plaintiff, then known as "Marie K. Brooks," filed a three-Count Complaint against the same Defendants[2] at *Brooks v. Lincoln National Life Insurance Co., et al.*, 2:18-cv-00667-AJS, in which action she appealed the denial of short-term disability ("STD") (Count I) and long term disability ("LTD") (Count II), and sought penalties under § 104(b)(4) of ERISA for Defendants' failure to provide to documents under which the STD and LTD Plans were operated (Count III).

3.By stipulation dated May 18, 2018 (Dkt. 18), the parties agreed to dismiss Count I (STD) with prejudice, and dismiss Counts II (LTD) and III (failure to furnish plan documents) without prejudice, pursuant to the terms of a Settlement and Release, which provided, *inter alia*, that Plaintiff would be paid her STD entitlement and Lincoln would "issue a decision on the merits of Plaintiff's LTD application."

4.By text Order dated May 18, 2018 (Dkt. 19), Judge Schwab dismissed the earlier action in accordance with the parties' stipulation.

5.After dismissal, on January 11, 2019, Lincoln Financial Group issued a new decision on Plaintiff's LTD claim denying all LTD benefits. (A copy of the denial is attached as **Exhibit A**.)

6.Plaintiff appealed and submitted additional medical evidence, physician reports and a 13-page letter brief identifying multiple errors in the decision.

7.In a second administrative decision dated November 1, 2019, the Lincoln Financial Group found that Plaintiff, in fact, was eligible for two years of LTD benefits from

---

[2] The Uniontown Hospital Weekly Disability Income Insurance Plan (the "STD Plan"), which provides STD benefits, was also a Defendant in the earlier action. As explained herein, since her STD claim has since been resolved, the STD Plan is not a named Defendant here.

November 2, 2015 through November 2, 2017, but ineligible thereafter. (A copy of this decision is attached as **Exhibit B**.)

8. Shaffer has exhausted all of her administrative remedies.

9. In the instant action Plaintiff: (i) is appealing Lincoln's November 1, 2019 denial of LTD benefits after November 2, 2017; and (ii) reasserting Count III from the earlier action, (which was dismissed without prejudice and is Count II here), which seeks penalties for Defendants' failure to provide requested plan documents in violation of Section 104(b)(4) of ERISA, 29 U.S.C. § 1024(b)(4).

## II. PARTIES

10. Plaintiff Marie Shaffer is a 49-year-old female who lives in Fayette County, PA.

11. Defendant, The Lincoln National Life Insurance Company ("Lincoln National"), is an Indiana corporation with its headquarters and mailing address at 1300 South Clinton Street, Fort Wayne, IN 46802, and is the LTD Plan claims administrator.

12. Defendant, the Lincoln Financial Group in care of the Lincoln Financial Distributors, Inc. ("Lincoln Financial"), is a Connecticut corporation with a mailing address at 350 Church Street, MLB1, Hartford, CT 06103 with offices located at 150 N. Radnor Chester Road, Radnor, PA 19087.

13. Defendant, the Uniontown Hospital Long Term Disability Plan (the "Plan"), is a welfare benefit plan within the meaning of the Employee Retirement Income Security Act ("ERISA") § 3(1), 29 U.S.C. § 1002(1), sponsored by Uniontown Hospital ("Uniontown"). On information and belief, the Plan appointed Defendant Lincoln Financial as named fiduciary for deciding benefit claims and any appeals under the Plan.

14.     Lincoln National accepted the above delegations of decisional control over the claims process and fiduciary duties and acted as Plan Administrator and insurer of the Plan.

### III.  JURISDICTION AND VENUE

15.     The Court has jurisdiction under 29 U.S.C. §§ 1132(e)-(f) and 28 U.S.C. § 1331.

16.     Venue over this action lies in this Court pursuant to 29 U.S.C. § 1132(e)(2).

### IV.  FACTS

**A.     Shaffer' Employment and Participation in the LTD Plan**

17.     Shaffer was employed by Uniontown Hospital for ten (10) years as a nutrition attendant until July 31, 2015.  Her primary duties were walking to patient rooms, taking dining orders, setting up food carts, and delivering food throughout the Hospital. The job required her to be on her feet most of the workday, lift 10-20 pounds, and interact with patients and staff.

18.     As a Uniontown employee, Shaffer was a participant in its STD and LTD Plans. (A copy of the LTD Plan is attached as **Exhibit C**.)

19.     Claimants who remain disabled after exhausting STD benefits are eligible for LTD Plan benefits.

20.     LTD Plan participants are eligible for benefits if they meet if they meet the Plan definition of "Totally Disabled," which is:

> 1. During the Elimination Period and [24 month] Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform all of the Main Duties of his or her Own Occupation.
>
> 2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform all of the Main Duties of any occupation which his or her training, education, experience, or physical or mental capacity will reasonably allow.

21. The LTD Plans provides eligible participants with a percentage of their weekly income subject to specified maximum and certain offsets.

22. On July 31, 2015, Shaffer stopped working due to health problems.

23. Shaffer suffers from degenerative joint disease, axial spondyloarthropathy/ anklylosing spondylitis, fibromyalgia, and major depressive disorder.

24. In August 2015, Plaintiff applied for STD.

25. By letter dated October 2, 2015, Lincoln National partially approved Shaffer's STD claim through August 15, 2015, but not thereafter.

26. Shaffer appealed, submitted additional evidence, identified errors in Lincoln National's denial, and requested reinstatement of STD benefits and an award of LTD.

27. By letter dated May 13, 2016, Lincoln National denied Shaffer's appeal.

28. Shaffer filed a second appeal, which Lincoln denied on November 22, 2016.

**B.    Shaffer is Granted Social Security Disability Insurance Benefits**

29. The STD and LTD Plans require claimants to apply for Social Security Disability Insurance ("SSDI") benefits, which Shaffer did in July 2015, after she stopped working.

30. By decision dated July 8, 2016, Social Security ALJ Regina Carpenter found that Shaffer was "disabled"—that is, unable to perform any work in the national economy—since July 31, 2015 and awarded her SSDI. (A copy of this decision is attached at **Exhibit D**.)

31. The ALJ noted that the medical evidence established that Shaffer suffers from:

- Spondyloarthropathy;
- Fibromyalgia;
- Degenerative joint disease of the sacroiliac, and cervical and lumbar spines;
- Lung nodules and emphysematic changes;
- Left foot osteophyte, anxiety disorder and major depressive disorder; and
- "[C]onditions, [that] in combination, have had a substantial effect on her ability to perform most basic work functions."

32. The ALJ concluded that:

> Considering the claimant's age, education, work experience, and residual functional capacity, **there are no jobs that exist in significant numbers in the national economy that the claimant can perform.**

(Exhibit D, "Findings of Fact and Conclusions of Law: 10," p. 7) (emph. supp.)

C. **Shaffer's Medical History**

33. In 2013, Shaffer began experiencing unspecified joint, back and limb pain.

34. In February 2014, her PCP, Dr. Zimmerman provisionally diagnosed this as fibromyalgia, prescribed nerve pain medication, ordered tests, and referred Shaffer to Dr. Shchelchkov, a Neurologist.

35. Dr. Shchelchkov diagnosed her with "fibromyositis, myalgia unspecified," prescribed Neurontin and Tramadol, ordered tests, and noted "Pain level is 8/10" that "interfere[s] with [Activities of Daily Living] and work."

36. Spinal imaging showed degeneration at L4–5 and L5–S1, Facet Joint Degenerative Joint Disease at L2–L5, Disc Bulge and Facet Joint Degenerative Joint Disease at L3–L4, and Disc bulge at L5–Sl.

37. Over time, Drs. Shchelchkov and Zimmerman modified her prescriptions and tried various pain medications, with minimal success.

38. Shaffer also received trigger-point injections at Montgomery Medical Family Practice under Dr. Marcy Goisse, which provided only temporary relief.

39. On June 19, 2015, Dr. Shchelchov noted severe persistent pain that "lasts for many hours"; that Nortiptyline, Lyrica, Neurontin, Savella and Cymbalta did not help; and that she "can't tolerate strenuous physical exertion."

6

40. On July 31, 2015, Dr. Shchelchkov noted that her pain escalated to "10/10 daily and constant," and she is "unable to go to work."

41. During her August 21, 2015 visit to Dr. Shchelchkov, Shaffer was crying and complaining of "daily excruciating pain." Due to financial pressure, she asked him to clear her to return to work, which he would not do. Instead, he took her off work indefinitely and referred her to physical therapy ("PT").

42. On September 16, 2015, Shaffer began PT with Dr. April Brewer, DPT, at Advanced Physical Therapy Services, LLC in Masontown, PA.

43. Therapists noted that Shaffer could not tolerate PT due to severe pain.

44. In a letter dated October 20, 2015, Dr. Shchelchkov noted:

> I put [Shaffer] off work beginning this past July and she has been instructed by me to remain off work due to her medical conditions. **She is not able to lift, push, or pull AT ALL. She is very limited in ability to stand or sit. She is not able to work in any capacity at this time and until further notice.**

(emph. supp.).

45. In 2016, Shaffer began treating with Rheumatologist Dr. Eric Orlowsky, who diagnosed her with axial spondyloarthropathy/anklylosing spondylitis.

46. Although Dr. Orlowsky adjusted her medications and prescribed new medication, Humira, Shaffer's symptoms continued unabated and prevented her return to work.

47. Shaffer also treated throughout 2016 and continuing with Dr. Kuk Lee at Uniontown Pain Management. Dr. Lee prescribed powerful medications, including Oxycodone, Soma and Xanax, and administered nerve blocks and hip joint and trigger point injections of Lidocaine and Methylprednisolone.

48. In letter report dated October 9, 2019, Dr. Lee provided his diagnosis, prognosis, ability to work, and her limitations:

> Prognosis is guarded to poor as patient has failed to respond to the conversative treatment given over five years now.
>
> In my professional opinion and within a reasonable degree of medical certainty patient is currently completely and totally disabled from any type of work from the above diagnoses. **She is not capable of regular sustained work.** Her limitations are as follows: lifting, carrying, pushing and pulling less than 10# frequently (5-33%) and 10# occasionally (33-60%). Walking and standing for up to 20 minutes at a time for a total of two hours per day. Sitting for up to 30-60 minutes at a time. She is unable to twist, bend, kneel, crouch, squat, climb ladders or work at heights

(emph. supp.)

### D.    Lincoln National's Conflict of Interest

49. Lincoln National is a "fiduciary" within the meaning of 29 U.S.C. §§ 1002(21) and 1102 in that it exercises discretionary authority or control in managing the LTD Plan and/or exercised authority and control in managing or disposition of Plan assets and/or had discretionary authority or responsibility in Plan administration.

50. Lincoln National, acting under a conflict of interest, breached its fiduciary duties as set forth in ERISA § 404, 29 U.S.C. § 1104, in failing to act for the exclusive benefit of Shaffer or in accordance with the Plan, and in deciding her claim without considering all relevant information and otherwise failing to provide a full and fair review.

### COUNT I:
### DENIAL OF LTD PLAN BENEFITS

51. ¶¶ 1–50 are incorporated by reference.

52. ERISA, 29 U.S.C. § 1132(a)(1)(B) authorizes Plaintiff to bring an action to recover benefits due and clarify her rights to future benefits under the LTD Plan.

53. In denying benefits, Defendants ignored a small mountain of medical evidence and medical opinions, including charts and reports from a number physicians who actually treated Shaffer for years, who saw her repeatedly and could assess her condition and limitations over time as her condition grew worse, and which show that she plainly met the definition of "Totally Disabled" under the LTD Plan, in favor of retained doctor who conducted a one-time paper review and never actually laid eyes on, much less examined, Plaintiff and whose assessment and opinion conflict with those of the treating doctors and the physicians retained by the Social Security Administration ("SSA").

54. Defendants denied Shaffer's appeal without considering the SSA decision that found her **to be *disabled*** under the Social Security Act as of July 31, 2015.  See Exhibit D.

55. Defendants violated the full and fair review provisions of ERISA § 503, 29 U.S.C. § 1133, and implementing regulations of the Department of Labor ("DOL"), 29 C.F.R. 2560.503-1(h), by, *inter alia*, failing to consider all comments, documents, records and other information submitted by claimant relating to her claim.

56. The denial of benefits on this record was arbitrary and capricious.

## COUNT II:
## FAILURE TO FURNISH LTD PLAN DOCUMENTS
## VIOLATION OF § 104 OF ERISA 29 U.S.C. § 1024(b)(4)

57. ¶¶ 1–56 are incorporated by reference.

58. Despite repeated requests from undersigned counsel on Plaintiffs' behalf, Lincoln failed to furnish Shaffer with a copy of the STD and LTD Plans. Copies of Plaintiffs' requests are attached as **Exhibits E-H**.

59. By letter dated April 28, 2017, Plaintiff, through counsel, requested that Lincoln National furnish, *inter alia*, the STD and LTD Plans, all Summary Plan Descriptions ("SPDs")

and any documents under which these Plans were operated. (A copy of the letter is attached as Exhibit E.)

60. By letter dated May 16, 2017, Lincoln Financial provided Plaintiff with documents related to the STD Plan, but <u>not</u> the LTD Plan. (A copy of the letter is attached as Exhibit F.)

61. On November 14, 2017, Plaintiff, through counsel, sent a second letter to Lincoln National, again requesting the LTD Plan and related documents, explaining that Lincoln had failed to include these in its May 16, 2017 correspondence. (A copy of the letter is attached as Exhibit G.)

62. On January 11, 2018, Plaintiff, through counsel, sent a third letter to Lincoln National, requesting LTD documents and reminding it that ERISA § 502(c), 29 U.S.C. § 1132(c) provided penalties for failure to respond to these requests. (A copy of the letter is attached as Exhibit H.)

63. On January 19, 2018, Plaintiff's counsel received two letters from Lincoln Financial, dated January 3 and January 8, 2018. The earlier letter referenced only the STD Plan, and although the second letter stated it included a copy of the LTD Plan, and documents and file correspondence, none of these documents were included. (Copies of these letters are attached as **Exhibits I–J**.)

64. By failing to furnish Plaintiff with a copy of the LTD Plan, SPDs and any documents under which the LTD Plan was operated, Defendants breached their obligations under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4).

65. By failing to provide the information required by ERISA § 104(b)(4) within 30 days of Plaintiff's written request, Defendants are subject to fines under ERISA § 502(c), 29 U.S.C. § 1132(c).

## V.  RELIEF

WHEREFORE, Plaintiff prays that this Court:

a. Assume jurisdiction over her case;

b. Grant judgment in her favor and against Defendants;

c. Order Defendants to pay all benefits due under the LTD Plan from the date STD benefits ended to the date of judgment and continuing, including interest;

d. Declare and clarify her rights to past and future benefits under the LTD Plan;

e. Order Defendants to pay penalties as provided by 29 U.S.C. § 1132(c) for failure to furnish LTD Plan documents;

f. Order Defendants to pay the costs of suit, including attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g);

g. Direct Defendants to provide a procedure for a full and fair review of adverse determinations under the LTD Plan in accordance with 29 U.S.C. § 1133; and

h. Award all such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/John Stember

| | |
|---|---|
| James T. Carney, Esquire | John Stember, Esquire |
| PA ID No. 00232 | PA ID No. 23643 |
| jtcarney10@comcast.net | jstember@stembercohn.com |
| 845 Northridge Drive | **STEMBER COHN &** |
| Pittsburgh, PA 15216 | **DAVIDSON-WELLING, LLC** |
| T: (412) 561-0553 | The Hartley Rose Building |
| | 425 First Avenue, 7th Floor |
| | Pittsburgh, PA  15219 |
| | T.: (412) 338-1445 |
| | F.: (412) 338-1446 |

Dated:  October 30, 2020                            *Plaintiff's Attorneys*